ROBERT J. MILES and LILA I. MILES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Miles v. Commissioner
Docket No. 15930-79
United States Tax Court
T.C. Memo 1983-206; 1983 Tax Ct. Memo LEXIS 580; 45 T.C.M. (CCH) 1333; T.C.M. (RIA) 83206; April 13, 1983. Dante M. Scaccia, for petitioners. Jerome F. Warner, for respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $1,021 in petitioners' tax for 1976. After concessions, the issue for decision is whether petitioners' chicken farming was an "activity not engaged in for profit" within the meaning of section 183.[1]
Trial was held in this case on May 26, 1981, before the Honorable Sheldon V. Ekman, who died before entering a decision. Petitioners' Motion for New Trial was granted on September 16, 1982, and the *581 parties partially retried this matter on December 7, 1982. At that time, the parties agreed to stipulate to the record made in the prior proceeding, supplementing it with any additional evidence admitted at the new trial. FINDINGS OF FACT Petitioners Robert J. Miles and Lila I. Miles were married during 1976 and timely filed a joint Federal income tax return for 1976 with the Internal Revenue Service Center in Andover, Massachusetts. Petitioners resided in Sauquoit, New York, during the year in issue and at the time of the filing of the petition herein. Hereinafter Robert J. Miles will be referred to as "petitioner." Petitioner is a licensed professional engineer in the State of New York. He has been employed full time as an electrical engineer by General Electric Company since 1958 and was so employed in 1976. He has a Bachelor of Science in Electrical Engineering from Massachusetts Institute of Technology, a Master of Science in Electrical Engineering from Syracuse University, and has almost completed the requirements for a Master's in Business Administration at Rensselaer Polytechnic Institute. Lila I. Miles was a housewife during the year in issue; she and petitioner *582 have five children, who, in 1976, ranged from approximately 8 to 17 years of age. In 1971, petitioner bought a farm located about 3 to 4 miles from his home. The farm consisted of 45 acres of land (of which 35 to 40 were tillable), a barn, and a storage house. Petitioner subsequently bought a farmhouse situated on land adjacent to the farm and moved his family into it before beginning his farming activities.
In the fall of 1975, petitioner began a chicken farming venture. Petitioner did not study chicken farming methods, consult experts, or make any independent investigation prior to beginning his venture. He bought mature chickens from a farmer located in another community. These chickens were generally nonproductive, however, and many died during the winter, although petitioner and his family tried to take care of them. Petitioner did not realize that the hen house had to be heated to induce the chickens to lay eggs. In addition, the chickens were raised under the "open range" concept, which allowed the chickens to roam freely. As a result, if any eggs were produced petitioner either could not find them or could not guarantee their freshness for sale. Petitioner then decided *583 to buy and raise chicks, not realizing that chickens must be at least 8 months old before they become productive. After learning that the chicks were not going to be productive, petitioner, with his wife's prodding, decided to get out of chicken farming. After 1976, he attempted to enter the berry farming business, but it was also unprofitable due to a combination of unforeseen natural occurrences and petitioner's ignorance of berry farming. In 1979, petitioner began a hydroponic tomato venture, which had not been profitable as of the time of the second trial. Petitioner did not maintain a separate checking account with respect to his chicken farming activity. He did not maintain separate books for the venture. His receipts were kept in manila folders. In 1974, he applied for and received a certificate for transacting business under an assumed name from the State of New York. Petitioner reported wages of $26,342.70 for 1976. On Schedule F, Form 1040, petitioner reported no farm income and various farm expenses totaling $3,918.24. This deduction was disallowed by respondent, who advised petitioner that the "farm expenses * * * [were not] ordinary and necessary expenses for *584 the production of income, and you have not verified the expenses * * * [that] have been disallowed." At trial, petitioner produced receipts documenting the expenditures, and respondent conceded the issue of substantiation. On brief, respondent conceded that $228.28 claimed as taxes paid was properly deducted. OPINION Respondent contends that petitioner's activities with respect to his farm were activities "not engaged in for profit" within the meaning of section 183(a). Section 183 proides in part that if an individual's activity is "not engaged in for profit" only those deductions allowable regardless of a profit objective (such as interest or taxes) may be taken. The disputed deductions are allowable only if petitioner had an actual and honest profit objective in investing in the farming activities. Dreicer v. Commissioner,78 T.C. 642 (1982), on appeal (D.C. Cir., June 1, 1982). The taxpayer's expectation of profit need not be a reasonable one, but the taxpayer must enter into the activity, or continue it, with a profit objective. Sec. 1.183-2(a), Income Tax Regs.; Allen v. Commissioner,72 T.C. 28, 33 (1979). The determination of *585 whether the requisite objective exists is to be resolved on the basis of all the facts and circumstances. Dunn v. Commissioner,70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980). The burden of proof is on petitioner, Golanty v. Commissioner,72 T.C. 411 (1979), affd. in an unpublished opinion 647 F.2d 170 (9th Cir. 1981), with greater weight given to objective facts than to petitioner's mere statement of intent. Sec. 1.183-2(a), Income Tax Regs.; Engdahl v. Commissioner,72 T.C. 659, 666 (1979). The regulations provide a list of factors relevant in determining whether a taxpayer has the requisite profit objective. No one factor is conclusive, and we do not reach our decision herein by merely counting the factors that support each party's position. Sec. 1.183-2(b), Income Tax Regs.; Dunn v. Commissioner,supra at 720. These factors are: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity *586 may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, that are earned; (8) the financial status of the taxpayer; and (9) any elements of personal pleasure or recreation. Sec. 1.183-2(b)(1) through (9). The factors that are meaingfully applied to the facts of this case are discussed below. The manner in which petitioner carried on his chicken farming activity does not support his claim of a profit objective. Petitioner's chosen method of chicken farming, the "open range" concept, seems guaranteed to prevent the realization of profits. It simply was impossible for petitioner to market eggs while allowing his chickens to roam about freely. Petitioner did not attempt to maintain any records that would help him determine whether his expenses could ultimately be recouped. He testified that he had additional related expenses that he did not bother to claim. Thus, petitioner's manner of conducting his farming activity does not reflect a bona fide profit objective and undermines his statements to the contrary. *587 Dunn v. Commissioner,supra at 720; Jasionowski v. Commissioner,66 T.C. 312, 322 (1976). The obvious lack of expertise of the taxpayer or his advisors, is also supportive of respondent's position and adverse to petitioner's. Although petitioner testified that he spent some time during his youth employed on a chicken farm, he did not present any evidence that he did anything more than the most menial of tasks. In addition, petitioner's own testimony, as well as the chain of events leading to his decision to abandon chicken farming, reveals that petitioner knew very little about it. Petitioner made no effort to learn about chicken farming prior to incurring the expenses in question, nor did he consult experts or advisors who may have been able to prevent some of petitioner's losses. After one disaster, petitioner still failed to consult others although his own experience with chicken farming was quite limited. As a result, petitioner made another unfortunate and costly mistake in buying chicks. These facts indicate a lack of profit objective. See Golanty v. Commissioner,supra at 432. Petitioner was employed full *588 time as an electrical engineer while he was engaged in his chicken farming venture. He did not take leave from that job to attend to the farm or gradually phase out his engineering duties to spend more time farming. [2] Although this is not a prerequisite for a finding of a profit objective, petitioner's failure to demonstrate that either he or his family devoted substantial amounts of time or energy to discerning the problems with the chickens or learning how to remedy the problems encountered suggests a lack of a profit objective. Petitioner testified at great length about other "business" ventures he has undertaken, both prior and subsequent to the chicken farming activity. These include marketing snowmobiles (prior), growing raspberries (subsequent), and growing hydroponic tomatoes (subsequent). Both the snowmobile and raspberry ventures met with the same initial enthusiasm, lack of success, and abandonment as the chicken farming venture. Although the tomato activity may ultimately be successful, it had not yet become so by the second trial, which was held approximately 3 years after the *589 activity was initiated. Petitioner's lack of success in carrying on other similar or dissimilar activities tends to negate his claim that he held the required profit objective in 1976. Neither of the next two factors provided in the regulations, the petitioner's history of income or losses with respect to the activity and the amount of occasional profits, if any, that are earned by the activity, support petitioner's argument that he entertained a profit objective.There was no evidence that petitioner's losses were unavoidable, or that others engaged in the activity for profit often incur similar losses. Petitioner has a history of only losses and this loss pattern tends to negate the required profit objective. Petitioner did not have a significant amount of gross income in 1976; nor did he realize inordinately large amounts of tax savings attributable to his farm losses, although the amount was not insignificant. Unfortunately for petitioner, this is but one factor slightly in his favor and it does not overcome the weight of the factors supporting respondent's position. The farm did not have facilities on it that would make recreation and not profits the more plausible reason *590 for being there, but petitioner and his family made their home there, which strengthens the inference that the activities served a personal purpose. In summary, when the facts of this case are examined in the light of the factors provided in the regulations, [3] we conclude that petitioner did not have an actual and honest profit objective with respect to his chicken farming activity. Because of concessions by respondent, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. Compare, e.g., Daugherty v. Commissioner,T.C. Memo. 1983-188↩.
3. The one factor not discussed, the expectation that assets used in the activity may appreciate in value, was not addressed by the parties and presumably is not relevant herein.↩